ROBERT L. BOMBARDIERI & another[1] vs. REGISTRAR OF
MOTOR VEHICLES (and a companion case[2]).

Suffolk. December 1, 1997. - January 6, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, MARSHALL & IRELAND, JJ.

*Registrar of Motor Vehicles,* Records, Electronic communication. *Motor Vehicle,* Registration. *Statute,* Construction. *Public Records.*

This court concluded that the language of G. L. c. 90, § 30A, was intended only to restrict the use by private parties of the computer terminals under the control of the Registrar of Motor Vehicles and not to prohibit the use of or electronic access to the registry's computer data files; accordingly, the registrar did not violate the statute in implementing a program permitting automobile dealers to communicate electronically with the registry for new vehicle registrations and title transactions. [373-378]

CIVIL ACTIONS commenced in the Superior Court Department on December 12, 1996, and January 16, 1997, respectively.

The cases were heard by *Margaret R. Hinkle,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review in the first case and, on its own initiative, transferred the second case from the Appeals Court.

*David A. Bunis (David M. Osborne* with him) for Robert L. Bombardieri & another.

*Joseph L. DeLorey* for Cheryl Mann & others.

*Edward J. DeAngelo,* Assistant Attorney General, for Registrar of Motor Vehicles.

MARSHALL, J. The plaintiffs in these consolidated cases claim that the Registrar of Motor Vehicles (registrar) violated G. L. c. 90, § 30A, in implementing a new program that permits automobile dealers to communicate electronically with the registry for new vehicle registrations and title transactions. A judge in the Superior Court granted summary judgment in favor

[1]B & T Express, Inc.

[2]Cheryl Mann & others vs. Registrar of Motor Vehicles.

of the registrar. We granted Bombardieri's application for direct appellate review; the appeal of the companion case, consolidated with Bombardieri's appeal in the Appeals Court for briefing and decision only, was transferred to this court on our own motion. We affirm the judgment below.

1. In April, 1995, the registrar initiated a program called distributed registration and information vehicle entry (DRIVE) program. The program's purpose is to reduce delays and inconvenience for persons seeking to register new vehicles. Under the DRIVE program, an automobile dealer may communicate electronically with and obtain certain limited information from the registry in order to process new vehicle registrations. Dealer participation is voluntary and subject to terms and conditions established by the registrar. As of January, 1997, forty-five dealers participated in the program.

To register a new vehicle, an owner must complete a registration application form (RMV-1) providing the owner's name, address, driver's license number, date of birth, principal place of garaging, lessee name (if applicable), varied information about the new vehicle, and identification of the insurer and any lienholders. This information must be presented to the registry. Except for the DRIVE program, the registry receives the information by direct delivery of the paper form by either the vehicle purchaser or a "runner," a person used by dealers to carry the RMV-1 to the registry.[3] For registration through the DRIVE program, software electronically transmits the RMV-1 information from the dealers' computers to a third-party network provider that converts data to a compatible format and then transmits it electronically to registry computers. In either case, the registry verifies the information and determines whether there is any reason a registration may not issue. After reviewing the information and approving the registration, the registry either issues the registration certificate and registration plate in person to the purchaser or runner, or electronically notifies the DRIVE participating dealer of the approval. In the latter cases, the dealer then prints a registration certificate and, if one is required, gives the vehicle purchaser a registration plate from a

---

[3]The plaintiffs in one case brought against the registrar are Robert Bombardieri, chief executive officer and shareholder in B & T Express, Inc., and B & T, which provides runners to take registration paperwork from automobile dealers to the registry. The plaintiffs in the companion case are registry employees, their union, and a union official.

controlled inventory that the registry has provided for such transactions.

In instances when the registry cannot complete a registration, the registry notifies the DRIVE participating dealer, but does not disclose the reason why a registration cannot be processed. The dealer then informs the purchaser that a personal trip to the registry is necessary to complete the registration.[4] The electronic communication capability provided to DRIVE participating dealers is restricted.[5] At no time do dealers use any computer terminal under the control of the registry.

The Bombardieri plaintiffs filed their action on December 12, 1996; the Mann plaintiffs filed their action on January 16, 1997. On May 1, 1997, after a hearing, a judge denied the plaintiffs' motions for summary judgment, and allowed the registrar's cross motions holding that the DRIVE program does not violate G. L. c. 90, § 30A. The plaintiffs filed timely notices of appeal.

2. The central issue before us is whether the DRIVE program violates G. L. c. 90, § 30A.[6] The plaintiffs contend that this statute prohibits the dealers' access via electronic links to driver information stored in the registry's computerized database. The

---

[4]In connection with, and only with, a registration transaction, a dealer is authorized and has the capacity to check a customer's registration status at the beginning of the process so that the customer can be informed promptly if a trip to the registry will be necessary. To check the customer's status, the dealer enters a license plate number, title number, or vehicle identification number, and the registry provides via the electronic network the owner name, address, license number, date of birth, registration data, vehicle data, insurance and lienholder information, and if a reason exists that registration cannot be processed (but not what the reason is).

[5]For example, dealers are not able to access a driver's history, license suspension data, other vehicles owned by the driver, or medical information relative to a driver's license or disability plate application.

[6]General Laws c. 90, § 30A, provides:

"The registrar shall not allow *direct or indirect use of the computer terminals under his control, whether for inquiry into computer data files or otherwise,* except by persons employed by the commonwealth or a political subdivision thereof, law enforcement agencies, the special investigative unit of the plan created pursuant to [G. L. c. 175, § 113H] only to the extent authorized therein, insurance companies and their authorized agents and service carriers to the extent authorized in the safe driver insurance plan and for the purposes of complying with the requirements of [§§ 1A, 34A, 34B and 34H] pertaining to motor vehicle liability policies and the trial courts or computer manufacturers or data processing consultants under contract with the commonwealth" (emphasis supplied).

registrar argues that the statute prohibits persons, not otherwise specifically authorized therein, from using the registry's computer terminals, and, since DRIVE participating dealers use their own terminals and software loaded on to their own computer systems to access the registry's computer, the statute is not violated by the DRIVE program. The dispute focuses on the proper construction of the statutory phrase "direct or indirect use of the computer terminals."

We have never had occasion to construe this statute. "We generally construe statutes to give effect 'to the intent of the Legislature [as] ascertained from all [the statute's] words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Globe Newspaper Co.* v. *Beacon Hill Architectural Comm'n*, 421 Mass. 570, 584 (1996), quoting *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983). See *Meunier's Case*, 319 Mass. 421, 423 (1946).

A literal reading of the contested statutory phrase, giving "computer terminal" its ordinary meaning, suggests that the statute restricts use only of the registry's computer hardware. In this case, however, we hesitate to limit our inquiry to a "plain meaning" interpretation of the phrase. When the statute was first enacted,[7] computer technology was less advanced, configurations of equipment and systems quite different, and the contours of terms less well established or understood. We cannot rule out imprecision in the Legislature's use of technical terminology. We note, however, that the statute also refers to "computer data files." The Legislature might have prohibited the use of the registry's computer data files, but chose instead to restrict "use of the computer terminals . . . whether for inquiry into computer data files or otherwise." This phrasing seems to place emphasis on protection of the terminals, prohibiting their unauthorized use for any reason, rather than protection of the registry's data files.

We also take note of some historical background to the act's

---

[7]The General Court enacted G. L. c. 90, § 30A, in 1972. St. 1972, c. 239.

passage. At that time, motor vehicle registration applications were considered public records.[8] Because the records themselves were public at that time, the statute could not have been intended to protect the information contained in the records, albeit the mere fact that registry records were considered public does not definitively rule out a possibility that the Legislature may have intended to restrict access to computerized forms of records. A more specific background fact sheds additional light on the statute's enactment. On August 28, 1970, the Attorney General issued an opinion that registry records of revocations and suspensions of licenses and vehicle registrations were public records and were to be made available, as requested by insurance companies, "in computer processable form." Rep. A.G. Pub. Doc. No. 12, at 43, 46 (1971). The Attorney General further concluded that there was no reason not to allow "members of the insurance industry to use a computer terminal by which they can inquire directly into the Registry's com-

---

[8]General Laws c. 90, § 30, provides that "[a] proper record of all applications and of all certificates and licenses issued shall be kept by the registrar at his main office, and such records shall be open to the inspection of any person . . . ." In 1937, we stated that "the registrar's records are fully impressed with the character of public records, and . . . the public generally has with respect to them all the privileges of examination and use which that status affords." Direct-Mail Serv. v. Registrar of Motor Vehicles, 296 Mass. 353, 355 (1937). Well after enactment of c. 90, § 30A, the Appeals Court revisited the issue of registry records in light of G. L. c. 4, § 7, Twenty-sixth (c), which exempted from the definition of public records "materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." Doe v. Registrar of Motor Vehicles, 26 Mass. App. Ct. 415, 418 (1988). Interpreting c. 90, § 30, to make "public a record of all applications and licenses but . . . not make the applications or the licenses themselves public documents," id. at 421, the Appeals Court determined that certain registration application data, namely social security number, date of birth, and height of an applicant, were "personal data" and a person seeking access to that data had to show that disclosure was warranted. Id. at 418.

Under the Federal Driver Privacy Protection Act, 18 U.S.C. §§ 2721-2725, enacted in 1994 and effective on September 13, 1997, personal information obtained in connection with a motor vehicle record may not be disclosed except for certain specified reasons. Id. at § 2721. The DRIVE program is consistent with the Federal statute, because participating dealers normally receive information only to confirm information already provided by the customer and, in all circumstances, only with the customer's consent. See id. at § 2721(b)(3).

puter."[9] *Id.* We are persuaded that the statute was likely a response to this opinion.

Legislative history on the statute is sparse. Two bills addressing the subject matter had been introduced into the House of Representatives.[10] One of these, 1972 House Doc. No. 4554, concerned specifically with registry records of license suspensions and revocations, confirms our conclusion that the legislation concerning the registry's computers was in response to Rep. A.G., *supra* at 43. This bill suggests that the main object

[9]The Attorney General's opinion suggested that the registrar could provide the sought-after information "through the lease of a terminal in the Registry's computer." Rep. A.G., Pub. Doc. No. 12, at 46 (1971). An affidavit of the registrar's chief information officer points out that the registry computer, a large machine operated with punch cards, primitive by today's standards and predating the introduction of personal computers, was a technology still not widely available. While protection of computer terminals in today's age of virtually universal access to such hardware may seem a quaint statutory provision, it is plausible that when G. L. c. 90, § 30A, was enacted, private organizations would seek access to such computer hardware and the Legislature may have been reluctant to share a valuable Commonwealth resource.

[10]1972 House Doc. No. 3968 entitled, "An Act prohibiting the use of the computer under the control of the registrar of motor vehicles by any person not employed by the commonwealth," provided:

> "The registrar of motor vehicles shall not permit any person not employed by the commonwealth to use the computer terminal under his control, directly or indirectly, whether for inquiry into the computer program or otherwise."

1972 House Doc. No. 4554 entitled, "An Act relative to the public availability of certain records of the registry of motor Vehicles," provided:

> "Chapter 90 of the General Laws is hereby amended by inserting after section 30 the following section: —
>
> *Section 30A.* The registrar in making records available to the public relative to licenses which have been suspended or revoked under the provisions of this chapter, shall not make any computor [*sic*] or tabulation system of the registry for listing such suspensions and revocations available to any person, company or corporation or in any way permit such an examination of the registry's records relative to such suspensions and revocations as would in any way disrupt the normal daily routine of the registry or make it the provider of business information for any outside agency, enterprise or company."

These two bills were referred to the House Committee on Public Safety, which reported out the bill which subsequently became G. L. c. 90, § 30A. See 1972 House Doc. No. 5454.

of the statute and the mischief toward which it was directed was the potential disruption of the registry's daily operations, in light of the Attorney General's granting access to the registry's computer terminals to private parties.

We find the evidence that G. L. c. 90, § 30A, was intended to protect computer terminals, not computerized records, more persuasive than any of the plaintiffs' arguments. There is no evidence brought to our attention to support the conclusory argument that protecting motor vehicle registrants' privacy was the Legislature's purpose for the statute.[11] The plaintiffs ask us to focus on the word "indirect" in the statute, which, in order to have a meaning independent from the use of computer terminals "direct[ly]," must prohibit, they contend, electronic access to the data files.[12] We see no reason to attribute the meaning the plaintiffs advocate to such a general word, especially in light of statutory language attempting to describe a restriction on what at the time was a novel and not well-understood technology. The plaintiffs' attempt to find support from a superseded advisory opinion of the supervisor of public records, interpreting the statute to prohibit on-line access to registry information, is equally unavailing.[13]

Were the foregoing analysis of the statute all that supported our interpretation, we might not be so confident that our narrow interpretation of G. L. c. 90, § 30A, was correct. Another more recent statute, G. L. c. 90C, § 7A,[14] however, confirms how we must give effect to the statute at issue. The second sentence of

[11]Because we reach the merits of the plaintiffs' claims, we need not address whether they have standing. We observe, however, that in order to resolve the issue of standing, we must find that they have "allege[d] an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). We must therefore reach the merits and construe the statute in any event. In light of our conclusion as to the statute's area of concern, neither the plaintiffs' alleged economic injuries nor the DRIVE program's alleged intrusion into the plaintiffs' privacy as vehicle registrants constitute injuries that G. L. c. 90, § 30A, was intended to remedy.

[12]We neither endorse nor reject the registrar's interpretation that one can "indirectly" use a keyboard by getting someone else to use it.

[13]The supervisor of public records issued his opinion that G. L. c. 90, § 30A, prohibited on-line access to the registry's records in a letter dated March 29, 1990; he later rescinded this opinion and reached the opposite conclusion in a letter dated March 30, 1994.

[14]General Laws c. 90C, § 7A, inserted by St. 1991, c. 138, § 163, provides:

G. L. c. 90C, § 7A, unmistakably authorizes the registrar to use electronic means to fulfil one of his main c. 90 duties of registering vehicles. The plaintiffs point out that G. L. c. 90C, § 8, immediately follows G. L. c. 90C, § 7A, and states that "[n]othing in this chapter shall be construed to supersede the powers and duties of the registrar as provided in chapter ninety." Were we to accept the plaintiffs' broad interpretation that G. L. c. 90, § 30A, restricts use of computerized records in addition to computer terminals, and that therefore the clear authorization of G. L. c. 90C, § 7A, may not operate to supersede G. L. c. 90, § 30A, then the second sentence in c. 90C, § 7A, would be a nullity. "A statute should not be construed in such a way as to make it a nullity when a sensible construction is readily available." *Clean Harbors of Braintree, Inc.* v. *Board of Health of Braintree*, 415 Mass. 876, 883 (1993). We also attempt to "construe related statutes harmoniously so as to give rise to a consistent body of law." *Marco* v. *Green*, 415 Mass. 732, 736 (1993). The interpretation that we give here to G. L. c. 90, § 30A, enables us to avoid rendering G. L. c. 90C, § 7A, a nullity and establishes a harmonious and consistent body of related law.

*Judgment affirmed.*

---

"The administrative justice of the district court department and the registrar may jointly determine that any communication between the courts and the registry required to implement chapter ninety or this chapter may be accomplished solely by electronic means. The registrar may determine that any other communication by or to the registry required to implement chapter ninety or this chapter may be accomplished solely by electronic means."