van Gestel, J.
This matter comes before the Court on a motion by the defendant, Savings Bank Life Insurance Company of Massachusetts (“SBLIC”), seeking summary judgment pursuant to Mass.R.Civ.P. Rule 56. The facts on which the parties are in agreement follow.

BACKGROUND

The Savings Bank Life Insurance system “had its origin in studies initiated in 1905 by Louis D. Brandéis, who himself called it ‘wage earners’ life insurance.’ ” Opinion of the Justices, 345 Mass. 780, 782 (1963). The system was established by the Legislature in 1907 to provide “safe, low cost life insurance” to the public. G.L.c. 178 (repealed by 1990 Mass. Acts c. 499). Brandéis created the system in response to abuses in the life insurance industry that included building up by insurers of excessive amounts of surplus. Prior to 1992, Savings Bank Life Insurance policies were issued by the “insurance departments” of Massachusetts savings banks. The system was under the direct supervision of the Division of Savings Bank Life Insurance, see, e.g., G.L.c. 26, Secs. 1,9 and 10, and was subject to all of the general regulations of the Massachusetts insurance code. G.L.c. 178, Sec. 6.
In 1990, the Legislature enacted G.L.c. 178A, which reorganized the Savings Bank Life Insurance system by combining the insurance departments of all participating savings banks into SBLIC, an independent domestic stock life insurance company, G.L.c. 178A, Sec. 2, subject to a variety of limitations on its stockholders. E.g., G.L.c. 178A, Secs. 4, 7 and 10. Special provisions were included in c. 178A to protect the existing and future policyholders of SBLIC, including a Policyholders Protective Board (“PPB”) to protect the separate interests of the company’s policyholders.
The savings banks which previously had operated the life insurance departments were provided stock interests in SBLIC, and SBLIC assumed all of the rights and liabilities of the former savings bank insur.ance departments and continued to sell participating life insurance policies. G.L.c. 178A, Sec. 7.
The reorganization of the Savings Bank Life Insurance system into SBLIC became effective at the close of business on December 31, 1991, pursuant to a Plan of Assumption, which, as was required by law, was submitted to and approved by the Commissioner of Insurance after notice and a hearing.
*640 Chapter 178A, Sec. 10, provides that no stock dividend can be paid to SBLIC’s bank stockholders without the approval of the PPB and the Commissioner of Insurance.
The statute also provides for the payment of a special policyholder dividend, payable without interest over 12 years, to the owners of policies issued under the prior Savings Bank Life Insurance system which were in effect as of the date of conversion. G.L.c. 178A, Sec. 5.
Chapter 178A provides that SBLIC is subject to the provisions of the Massachusetts general insurance laws, G.L.c. 175, including Section 141, a provision setting a 12% limit on the amount which a domestic life insurer may retain as a safety fund. Chapter 175, Sec. 141, further permits the .Commissioner of Insurance, for cause shown, to permit an insurer to accumulate and retain funds in excess of the 12% limit.
SBLIC has provided affidavit evidence asserting that it calculated its maximum safety fund amount by multiplying the total amount of the company’s reserves (life and accident and health reserves taken from lines 1 and 2 of page 3 of SBLIC’s Annual Statement) by 12%. These amounts are submitted to the Commissioner of Insurance each year. Following this methodology, SBLIC claims that it calculated its safety fund limit as follows for the year ending December 31, 1999:
Line Description Amount (in 000s)
1 Life Reserves 867,329.5
2 Accident and Health Reserves 388.7
Total Reserves 867,718.2
Maximum Safety Fund Calculated at 12% of Total Reserves Capital & Surplus 104,126.2
35 Unassigned Surplus 57,436.5
33 Gross paid In and combined surplus 95,983.9
36(1} Minus “Treasury Stock at Cost” -627.7
Minus “Shareholder Equity" In line 33 -38,393.5
Minus Present Value of Remaining Special Dividend -29,008.8
Total Adjusted Surplus (Actual Safety Fund) 85,390.4
Current Safety Fund % (Actual Safety Fund divided by Total Reserves) 9.84%
Amount under Safety Fund limit (Maximum Safety Fund Minus Actual Safety Fund) 18,735.8
The plaintiffs, also by affidavit evidence, challenge the accuracy of the foregoing calculations and contend that the correct safety fund calculation for the SBLIC is demonstrated below, using figures from SBLIC’s 1998 Annual Statement:[1]
(A)The reserve is determined by adding lines 1 and 2 on page 3. It equals $841,373,510.
(B) 12% of this reserve, the safety fund upper limit, is $100,964,821.
(C) Total capital is found on line 38 of page 3. It is $157,864,940.
Thus, according to the plaintiffs’ expert's calculations, the SBLIC safety fund equals 18.8% of the surplus and exceeds the statutory limit by $56,900,119 in 1998.
The principal differences in the foregoing calculations between the plaintiffs’ contentions and those of SBLIC are the adjustments to surplus which SBLIC claims to be entitled to make on account of two specific items: (1) the minimum value for the shareholder banks’ claimed equity interest in SBLIC, which it calculated to be $38,393,500; and (2) the present value, as of the time of calculation, of the remaining additional policyholder dividends mandated by G.L.c. 178A, Sec. 5, which SBLIC calculated to be $29,008,800.
Two provisions in the Plan of Assumption come into play in this case. The first reads:
The fact that all the surplus is not to be distributed to the policyholders immediately recognizes that the savings and insurance banks have an interest in the surplus arising from their establishment and maintenance of the insurance departments and because there will be no contributed capital to otherwise support the company. The banks’ prior contributions were discussed extensively during the years preceding the passage of Chapter 499.
The second reads:
The legislated method of surplus distribution was intended to provide about 60% of the present value of the combined surplus to policyholders and about 40% of the surplus to the shareholder banks, to represent their unreimbursed contributions.

DISCUSSION

Summary judgment may be granted in those circumstances in which “the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Mass.R.Civ.P. Rule 56(c). In the matter before the Court, effectively only partial summary judgment is sought, although, if granted, it is said by counsel for SBLIC that such a judgment may resolve the entire case.
SBLIC seeks a judgment to the effect that it correctly calculated its “surplus” and its “safety fund” as those terms and phrases are used in G.L.c. 175, Secs. 140 and 141. The questions present a combination of law and fact. The law will come, at least initially, from this Court’s interpretation of these and other statutes. Thereafter, the facts will have to be determined from what was actually done by SBLIC in making its calculations. At this time the Court can only assess the legal issues. Following that assessment, the facts may be *641 agreed upon or litigated, depending upon the circumstances.
The Court begins this discussion by setting out significant portions of three statutes, and makes observations as to others, that it must consider.
G.L.c. 175, Sec. 140, reads, in material part, as follows:
[E]very domestic life company . . . shall provide in every participating policy of life . . . insurance that the proportion of the divisible surplus of the company contributed by said policy shall be ascertained and distributed annually, and not otherwise, except as hereafter provided . . . Every company shall on December thirty-first of each year or as soon thereafter as practicable, after providing from the funds attributable to its participating business for the reserve required by Sections nine and eleven and all other liabilities attributable to such business, including dividends declared upon the capital stock, if any, and such sum as may be held on account of existing deferred dividend policies, and providing also for a contingency reserve not in excess of the limit prescribed in the following section, apportion its remaining funds attributable to such business upon the contribution to surplus plan, as dividends, to all other policies entitled to share therein . . .
G.L.c. 175, Sec. 9, referred to in Sec. 140 above, regulates the computation of reserves; and Sec. 11, similarly referred to, relates to the computation of assets and liabilities.
G.L.c. 175, Sec. 141, reads, in material part, as follows:
Any domestic life company may from its surplus funds or profits attributable to its participating business accumulate and hold, or hold if already accumulated, as a safety fund, an amount not in excess of twelve per cent of its reserve for such business . . . and, in addition thereto, any surplus that may have been contributed by the holders of the guaranty stock of the company, or which has been accumulated for the retirement of said guaranty stock and the margin of the market value of its securities over their book value, provided that in cases where the existing surplus or safety fund, exclusive of all accumulations held on account of deferred dividend policies, exceeds the limit above designated, the company shall be entitled to retain said surplus or safety fund, but shall not be entitled to add thereto so long as it exceeds said limit, and provided that for cause shown, the commissioner may at any time and from time to time permit any company to accumulate and maintain a safety fund in excess of the limit above mentioned, for such period as the commissioner may prescribe in any one permission, by filing in his office his reasons therefor and causing the same to be published in his next annual report. . .
G.L.c. 178A, Sec. 5, relied upon by SBLIC in connection with its deduction for the present value of the special dividend, reads in material part as follows:
The plan of assumption shall require the company to assume all policies and contracts of savings bank life insurance in effect on the date of conversion. The plan shall also provide for distribution to individual policyholders of an amount equal to the surplus assumed by the company on the effective date of conversion. Such amount shall be distributed as additional annual dividends over a period of not less than eight nor more than twelve years in accordance with a schedule prepared by the company and approved by the commissioner and shall continue until the sum so distributed equals the amount of said surplus on said date of conversion. The amount of surplus. so distributed shall be considered as an expense in determining the net profits of the company... In any year, the company may defer the distribution of said surplus for such year upon certification to and approval by the commissioner that the same would result in reducing the surplus to reserve ratio of the company below six percent. In the event of a complete liquidation of the company, there shall be distributed to individual policyholders an amount equal to the difference, if any, between the surplus assumed by the company on the effective date of conversion and the sum of such previously distributed amounts.
The Court must interpret G.L.c. 175, Sec. 141, in order to determine the appropriate method by which SBLIC must calculate its “safety fund.” Statutory interpretation, of course, is a question of law for the Court to decide. Annese Elec. Services, Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In so doing, the primary duty of a judge is to give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Cos. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 374 (1998).
In determining the legislative intent behind a particular provision, the Court may also look to relevant provisions in other parts of the statute. Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283-84 (1991). Also, the Court ought to apply the plain language used in the statute when that language is unambiguous. ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000); Crenshaw v. Macklin, 430 Mass. 633, 634 (2000); *642 Commissioner of Revenue v. Cargill, Inc. 429 Mass. 79, 82 (1999). Sound judgment and common sense must be applied so as to make a statute an effectual piece of legislation. Sun Oil Co. v. Director of Division of Necessaries of Life, 340 Mass. 235, 238 (1960).
Here, the Court looks first to the Plan of Assumption referred to in the act establishing SBLIC. G.L.c. 178A. There it is stated that the fact that all of the surplus assumed by SBLIC on the effective date of conversion is not to be distributed to the policyholders immediately “recognizes that the savings and insurance banks have an interest in the surplus arising from their establishment and maintenance of the insurance departments and because there will be no contributed capital to otherwise support the company.” This informs the Court of two things: (1) the banks, which are the shareholders of SBLIC, have some interest in the original surplus said to flow from their establishment and maintenance of insurance departments within the banks; and (2) they also may have some interest in the original surplus because no capital otherwise was to be contributed to support SBLIC at the time of its creation.
The Plan of Assumption also recites that the method chosen by the Legislature for distribution of the surplus “was intended to provide about 60% of the present value of the combined surplus to policyholders and about 40% ... to the shareholder banks, to represent their unreimbursed contributions.” This suggests a method for placing a dollar value on the shareholders’ interest in the original surplus.
These provisions instruct the Court, at least, that the shareholder equity in SBLIC and the original surplus may be related and somehow should be considered in conjunction with one another. This Court notes, however, that, at the time of the creation of SBLIC, “savings and insurance banks [had] an extremely tenuous right to control the assets of their insurance departments and nothing approaching a constitutionally protected property interest in those assets." Opinion of the Justices, 401 Mass. 1211, 1221 (1987). With the possible exception of a $25,000 set aside by a bank establishing an insurance department, “the assets of those insurance departments, including the net profits generated and the accumulated surplus, [were] devoted exclusively to the benefit of the policyholders.” Id.
G.L.c. 178A, Sec. 5, mandates a distribution by SBLIC to the policyholders of “an amount equal to the surplus assumed by the company on the effective date of the conversion. That section, however, does not require that the entire surplus so assumed be distributed immediately on conversion. Rather, SBLIC, according to a schedule approved by the Commissioner, ’’shall" distribute such surplus over a period of from eight to twelve years, and that distribution is to be without interest until the year following the final payment. This, it is said, was a method of raising capital for the new enterprise.
Focusing on SBLIC’s calculations on p. 3 of this Memorandum, 40% of the original assumed surplus of $95,983,900[2] for the year ending December 31, 1991, equals $38,393,500.
Further, c. 178A, Sec. 5, recites that the “amount of surplus so distributed shall be considered as an expense in determining the net profits of the company.” Surplus is what is left of SBLIC’s assets after reserves and liabilities are accounted for. Thus, this Court reads this part of Sec. 5 as stating that the originad assumed surplus of SBLIC required to be distributed to the policyholders over twelve years must be considered a liability when determining the annual distributable surplus.
G.L.c. 175, Sec. 140, requires every domestic life insurance company — including the SBLIC — to ascertain and distribute its surplus to policyholders annually. Not all of the surplus, however, must be so distributed. G.L.c. 175, Sec. 141, permits SBLIC, and other domestic life companies, “from its surplus funds or profits attributable to its participating business [to] accumulate and hold, or hold if already accumulated, as a safety fund, an amount not in excess of twelve per cent of its reserve for such business ...”
The general statutory scheme in G.L.c. 175, Secs. 140 and 141, has applications to both the shareholder equity and the remaining special dividend. Those sections mandate the payment of annual dividends to participating policyholders. The source of the payment of dividends is the money earned or contributed by the participating policies. Every participating policy “shall provide . . . that the proportion of the divisible surplus of [the company] contributed by said policy” shall be determined and distributed annually, subject to certain adjustments. Sec. 140. It is Sec. 141 that permits SBLIC to set aside a contingency or safety fund comprised of its “surplus funds or profits attributable to its participating business." Thus, it is only funds attributable to profits from participating policies that are available for distribution as policyholder dividends.
None of the statutes here, nor the Plan of Assumption — nor, indeed, anything in the scant legislative history — expressly treats with, or even mentions, what elements may be considered by SBLIC in its annual surplus calculations. The Court, therefore, must apply its sound judgment and best notions of common sense in interpreting the law, so as to make it an effectual piece of legislation. In doing so, it will treat the two elements of “shareholder equity” and the “remaining special dividend” separately.

Shareholder Equity

On March 22, 1999, SBLIC sought a ruling by the Commissioner of Insurance concerning its calculation of the safety fund limit contained in G.L.c. 175, Sec. *643 141. In a letter dated April 28, 2000, Daniel R. Judson, the Acting General Counsel to the Division of Insurance, responded to SBLIC’s request. He began with the following observation:
With respect to your inquiry, you have first asked the Division to opine on the proper treatment of certain aspects of SBLIC’s financial statements, specifically whether in calculating surplus certain obligations of the company are properly treated as liabilities and not included in surplus, in connection with the calculation performed pursuant to G.L.c. 175, Sec. 141. G.L.c. 175, Sec. 141 does not provide that the Division perform this calculation. It is appropriate that each insurance company does so for itself, taking into account applicable statutory accounting principles, including existing statutes, regulations and any particular statutory or regulatory requirements prescribed or permitted which may apply to the case of any individual domestic life insurer. Accordingly, while SBLIC is subject to the financial accounting provisions contained throughout G.L.c. 175, it must also take into account the specific requirements of both c. 178A and the Plan [of Assumption] approved thereunder
This Court agrees with Mr. Judson’s observations.
Chapter 178A grants to the savings bank shareholders of SBLIC a share of the latter’s surplus at the date it began operations in 1992. That share is not money “attributable to its participating business.” Rather, it is identified in the Plan of Assumption as an amount representing the banks’ unreimbursed expenses in supporting their insurance departments, and thereby supporting and maintaining the savings bank life insurance system up to the time of the creation of SBLIC. The Plan of Assumption speaks of this amount as “about 40% of the surplus” for the shareholder banks "to represent their unreimbursed contributions.” This characterization of the Plan seems at odds with the accepted fact that no liability can occur to the savings side of a savings and insurance bank because of the operation of an insurance department. But the 40% allocation are the words of the Plan of Assumption and, to this Court at least, must be considered as having some intended effect in interpreting the application of Sec. 141 to the special situation of SBLIC.
The Court further notes Mr. Judson’s observations to the effect that the shareholder banks have a separate interest in the original SBLIC surplus, it not being immediately distributable to the policyholders, and the Plan’s establishment of the respective interests of the policyholders and the bank shareholders therein of about 60% for the policyholders and about 40% for the banks.
The fact that if SBLIC were to be completely liquidated, all of the surplus assumed by it upon reorganization, less the amounts already distributed, would be distributed to the policyholders does not detract from this position. To say that under certain circumstances — such as complete liquidation — the entire surplus must be used for the benefit of the policyholders does not mean that in the absence of such circumstances it may not be treated differently.
Since the segment of the original surplus attributable to the banks — about 40% — is a statutory construct on the date of SBLIC’s conversion and not part of its profits arising out of its participating business, it is appropriately deductible from the total surplus when calculating the safety fund, and this Court so rules. Whether the $38,393,540 amount deducted by SBLIC for the year ending December 31, 1999, is correct, however, remains a factual issue for trial or agreement by the parties.

Remaining Special Dividend

In his letter of April 28, 2000, Mr. Judson also observed that the special dividend was payable over twelve years in order to maintain the financial strength of SBLIC. He noted that the Legislature specifically prescribed the accounting treatment to be given the present value of the remaining additional policyholder dividends by providing in G.L.c. 178A, Sec. 5, that the “amount of the surplus so distributed shall be considered as an expense in determining the net profits of the company.”
In arriving at the present value of the remaining additional policyholder dividends, also as calculated on p. 3 herein, SBLIC states that it used an interest rate of 8% to determine its $29,008,800 number.[3]
SBLIC has treated the present value of the remaining additional policyholder dividends as a “liability” under G.L.c. 175, Sec. 140, and says that it has deducted that amount from its surplus in calculating its safety fund percentage. The Plan of Assumption specifically acknowledged that SBLIC’s surplus had to be adjusted to take into account the present value of the additional policyholder dividends. Had that adjustment not been made, SBLIC would have been in violation of the safety fund limit on its first day of operations.
The Commissioner approved the Plan of Assumption in 1991. By doing so, the Commissioner acknowledged at that time that the adjustment for the special policyholder dividend was permissible. To require otherwise, as the plaintiffs would have it, would result in double-counting the present value of those policyholder dividends out of the original surplus that remain to be paid.
Thus, the Court rules that the present value of the remaining special dividend is a liability that may properly be deducted from the surplus in the process of calculating the safety fund.

ORDER

For the foregoing reasons the motion for summary judgment of the defendant, SBLIC, is ALLOWED to the *644 limited extent of this Court’s declaration that it is appropriate for SBLIC, given its special circumstance, when calculating its safety fund under G.L.c. 175, Sec. 141, to deduct from its gross paid in and combined surplus a value for shareholder equity equal to 40% of the surplus assumed as of the date of its creation and to also deduct therefrom a sum equal to the present value of the remaining special dividend to policyholders. This ruling makes no determination, however, as to the accuracy or correctness of any of the actual numbers for the original assumed surplus, the value of the shareholder equity or the present value of the remaining special dividend throughout the period from 1991 to date, those matters being factual, material and contested.

REPORT OF THE CASE

This Court is of the opinion that the rulings made by it in this Memorandum so affect the merits of the controversy that the matter of statutory interpretation ought to be determined by the Appeals Court before any further proceedings in the Superior Court. The issues are of exceptional novelty and seem to have that cosmic quality that makes this case one of those rare few that is an appropriate candidate for a report. See Transamerica Ins. Group v. Turner Construction Co., 33 Mass.App.Ct. 446, 447-48 n. 2 (1992).
The laws creating and regulating the SBLIC are unique and to some extent opaque. The amount of money that turns upon a correct analysis of an aspect of those laws that relate to the correct calculation of the SBLIC’s safety fund is quite substantial. Without guidance from the courts — which this Court has attempted to provide, but which will surely be appealed by the losing side — the efforts of counsel in litigating hereafter the complex mathematical process of making the correct calculations, coupled with the necessary evidentiary proceedings underlying those calculations, could be enormously expensive and wasteful.
In short, this Court productively can go no further. It has wrestled with the statutory interpretation and made its rulings for whatever benefit they may be to a reviewing court. Such rulings, however, will not obviate an appeal therefrom in this case. Consequently, either before an expensive trial on the calculations or after it, there will be an appeal of this Court’s rulings. And nothing in the trial that follows will cause those rulings to change.
The Court, therefore, pursuant to Mass.R.Civ.P. Rule 64, reports to the Appeals Court the following two questions:
1. Whether, in calculating the safety fund permitted by G.L.c. 175, Sec. 141, the Savings Bank Life Insurance Company annually may deduct from its surplus an amount equal to 40% of the company’s assumed surplus at the date it began operations under the Plan of Assumption on January 1, 1992?
2. Whether, in calculating the safety fund permitted by G.L.c. 175, Sec. 141, the Savings Bank Life Insurance Company annually may deduct from its surplus an amount equal to the present .value of those special policyholder dividends called for by G.L.c. 178A, Sec. 5 that remain to be paid out of the company’s assumed surplus at the date it began operations under the Plan of Assumption on January 1, 1992?

 Although SBLIC’s example used figures from its 1999 Annual Statement and the plaintiffs’ expert used figures from the 1998 Annual Statement, the different methods of calculation remain readily apparent.

The plaintiffs’ expert suggests that this amount may be understated by over $3.4 million. For purposes of this Memorandum, this is not a material factor.

The plaintiffs’ expert challenges the accuracy of this calculation. This Court here makes no conclusions on this wholly factual issue.