van Gestel, J.
This matter comes before the Court on a motion by the plaintiff, Postal Community Credit Union (“Credit Union”), seeking summary judgment on its complaint for declaratory and other relief. At issue is the authority of the Commissioner of Banks for the Commonwealth of Massachusetts (the “Commissioner”) to regulate and control the conversion of a state chartered credit union to a federally charted mutual savings bank.

BACKGROUND

The parties are in essential agreement on the facts that follow.
Postal Community Credit Union, formerly known as Boston Post Office Employees Credit Union, is a credit union chartered pursuant to G.L.c. 171, with a principal place of business at 25 Dorchester Avenue, Boston, Massachusetts. The Credit Union’s administrative offices are located at 175 McClellan Highway, East Boston.
Thomas J. Curiy is the duly appointed Commissioner of Banks (the “Commissioner”) of the Commonwealth of Massachusetts. The Commissioner is in charge of the Division of Banks within the Massachusetts Department of Banking and Insurance.
The Credit Union’s shares and deposits are insured by the National Credit Union Share Insurance Fund up to applicable federal limits. As such, the Credit Union is subject to applicable federal rules and regulations and the Federal Credit Union Act, as administered by the National Credit Union Administration (“NCUA”).
Membership in the Credit Union is presently limited to (i) employees and retirees of the United States Postal Service and members of their immediate families; (ii) employees and retirees of the United States Government located in Massachusetts and members of their immediate families; (iii) employees and retirees of the Credit Union and members of their immediate families; and (iv) organizations of such employees, retirees and their immediate family members. Persons not otherwise eligible for membership may have joint accounts with other members of the credit union for the purpose of purchasing shares and making withdrawals only. At the present time, 90% of the members of the Credit Union are said by it to be employees or retirees of the United States Postal Service.
The Credit Union says that its Board of Directors has determined that certain charter changes are desirable to ensure the long-term health and stability of the Credit Union. The need for change is said to arise in large part from the limitations on products and services that may be offered, and on limitations on membership in the Credit Union, and the effect those limitations may have on the ability of the Credit Union to expand its membership, increase products and services offered to its members and operate profitably.
*31 In addition to the limits on its membership, the Credit Union is limited in the location of its offices. G.L.c. 171, Sec. 8 limits a state chartered credit union to operating in the “county wherein the main office is located or on a site within twenty-five miles from the premises of the main office.”
On June 8, 2001, the Credit Union, after deliberation by its Board of Directors as to the best interests of the Credit Union and its members, applied to the Massachusetts Division of Banks to convert its charter from an industrial credit union to a community credit union.
The comment period for the foregoing application expired on August 27, 2001. No comment was filed prior to the expiration of the comment period. The Division of Banks responded orally to the application and later confirmed the nature of that oral response in writing. The Credit Union’s application remains pending.
During the application period, the Credit Union also assessed the advantages and disadvantages of other options, including conversion to a Massachusetts savings bank, a federal credit union, a national bank and a federal thrift entity. Ultimately, the Credit Union decided that converting to a federally chartered mutual savings bank offered the most advantageous means of meeting its business goals.
On June 26, 2002, the Credit Union submitted to the National Credit Union Administration’s Regional Director a written request for preliminary approval of the methods and procedures to be used by the Credit Union to convert to a mutual savings bank.
By letter dated June 27, 2002, the Commissioner notified the NCUA of its objection to the conversion.
By letter dated July 2, 2002, the Commissioner ordered a meeting of the Board of Directors of the Credit Union to be held on July 15, 2002, at the Commissioner’s Office. The meeting was called pursuant to the authority of the Commissioner under G.L.c. 167, Sec. 3. The stated purpose of the meeting was to discuss “the action of the Board of Directors to authorize the proposed conversion from a Massachusetts Credit Union to a federal mutual savings bank.” The letter indicated that attendance at the meeting was “mandatory” and that failure to attend could result in sanctions under the statute.
At the July 15, 2002, Board of Directors meeting, the Commissioner advised that the Credit Union could not proceed with its application to convert to a federally chartered mutual savings bank. At the close of the meeting, the Commissioner signed a previously prepared document entitled Orders and Directions. Included in the Orders and Directions is the following:
The Credit Union shall not take any action in furtherance of the proposed conversion or any other form of corporate restructuring, including but not limited to the filing or furthering of any application, holding any meeting by the management of the Credit Union, or holding any meeting of the Credit Union’s membership without the prior written approval of the Division and its review of any related communications to the Credit union [sic] membership.
The Orders and Directions further provided that the Credit Union “shall not spend any additional funds of the Credit Union in furtherance of the proposed conversion,” except funds to seek a judicial determination with respect to its rights under Massachusetts or federal law to convert to a federal savings bank.
The Commissioner also ordered the Credit Union: not to terminate or withdraw its membership in the Massachusetts Credit Union Share Insurance Corporation; not to terminate or withdraw its excess share insurance coverage; to report to the Commissioner on a monthly basis its compliance with the order; and made the order applicable to the Credit Union and its officers and directors.
The Commissioner met with counsel for the Credit Union on August 14, 2002. Thereafter, after a September 12, 2002, request by the Credit Union for reconsideration, the Commissioner, on October 11, 2002, made some clarifications to the Orders and Directions. The essence of the document, however, remained unchanged.
Massachusetts statutory and regulatory laws contain no provisions expressly barring or permitting a federally insured, state chartered, credit union from converting to a federally chartered institution. Over the years, however, the Division of Banks has allowed several state chartered credit unions to convert to federally chartered credit unions. It has never, however, allowed a state chartered credit union to convert to a federally chartered savings bank.

DISCUSSION

Summaiy judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. Rule 56(c). The Credit Union, as the moving party, bears the burden of affirmatively demonstrating that there are no material triable issues of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
There being no statutoxy law expressly permitting or prohibiting the conversion from a Massachusetts chartered credit union to a federally chartered mutual savings bank, an initial question of significance is whether the Credit Union needs permission from the Commissioner to follow the course it seeks.
The language of the Supreme Judicial Court in Chicopee Co-operative Bank v. Board of Bank Incorporation, 347 Mass. 744 (1964), provides an instructive *32 beginning. There Justice Kirk, writing for a unanimous court, said at pp. 750-51:
We think that the [Board of Bank Incorporation’s] approval of the agreement to merge, and the assignment of the agreement as the basis for its approval of the application to convert, exceeded the board’s authority. In the first place, there is in this Commonwealth no express statutory authority for the merger of cooperative banks with Federal savings and loan associations, either with or without the approval of a public agency. A study of the Commonwealth’s banking statutes demonstrates that the Legislature has been explicit when it intended to permit mergers . . . Had the Legislature intended to permit the merger of cooperative banks with Federal savings and loan associations it would have indicated its intention in equally clear and explicit terms. Authority to do so cannot be implied in the face of such a clearly defined legislative pattern.
The Commissioner points to the extensive Massachusetts legislation governing the subject of conversion, merger, and consolidation in the banking industry. See, e.g., G.L.c. 168, secs. 34-38; G.L.c. 170, secs. 24-29; G.L.c. 171, secs. 78-80; G.L.c. 172, secs. 38, 38. In none of this legislation is there any express authority to permit the kind of cross-industry conversion sought by the Credit Union. And Chicopee Co-operative Bank seems quite clearly to rule out the possibility of any implied authority to do so.
In response to the Commissioner’s position, the Credit Union points to G.L.c. 171, Sec. 6A, added to the General Laws by St. 1998, c. 223, 34 years after the Chicopee Co-operative Bank decision, as providing the necessary statutory authority. The first sentence of Sec. 6A is the key part. It reads: “Notwithstanding other provisions of this chapter, a credit union organized under the provisions of this chapter and insured by the National Credit Union Share Insurance Fund may exercise any power and engage in any activity that is permissible for a credit union organized under the provisions of the Federal Credit Union Act in accordance with regulations promulgated by the commissioner pursuant to this section; provided, however, that any such activity is not otherwise prohibited.” The Credit Union fits the definition in Sec. 6A, and the activity it proposes is not otherwise prohibited.
Next, the Credit Union alerts this Court to the fact that Congress expressly granted to credit unions organized under the Federal Credit Union Act and state chartered federally insured credit unions the power to “convert to a mutual savings bank or savings association (if the savings association is in mutual form)...” See 12 U.S.C. Sec. 1785(b)(2)(A). The Credit Union then asks this Court to read G.L.c. 171, Sec. 6A as permitting it to exercise the “power” afforded by 12 U.S.C. Sec. 1785(b)(2)(A).
The Credit Union observes that the Commissioner’s regulations under G.L.c. 171, Sec. 6A do not restrict or regulate conversions. Further, the regulations state that the “express powers granted to credit unions under the General Laws are not limited or otherwise restricted by 209 C.M.R. 50.00 et seq.” 209 C.M.R. Sec. 50.02(2).
Statutory interpretation, of course, is a question of law for the Court to decide. Annese Elec. Services Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In so doing, the primary duty of a judge is to give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 374 (1998).
In determining the legislative intent behind a particular provision, the Court may also look to relevant provisions in other parts of the statute. Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283-84 (1991). Also, the Court ought to apply the plain language used in the statute when that language is unambiguous. ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000); Crenshaw v. Macklin, 430 Mass. 633, 634 (2000); Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999). Sound judgment and common sense must be applied so as to make a statute an effectual piece of legislation. Sun Oil Co. v. Director of Division of Necessaries of Life, 340 Mass. 235, 238 (1960).
Here, the Legislature, when enacting c. 171, Sec. 6A in 1998, must be presumed to have known what Justice Kirk said in Chicopee Co-operative Bank in 1964 about not implying permission not expressly granted. The language chosen in Sec. 6A is: “may exercise any power and engage in any activity that is permissible for a credit union organized under the provisions of the Federal Credit Union Act in accordance with regulations promulgated by the commissioner pursuant to this section; provided, however, that any such activity is not otherwise prohibited.” The words “a credit union organized under the provisions of the Federal Credit Union Act” are mirrored in 12 U.S.C. see. 1785(b)(2)(A). For the language of Sec. 6A to have any meaning it must be read as a grant to Massachusetts chartered credit unions of the powers given to credit unions organized under federal law. Those latter powers clearly include the right to “convert to a mutual savings bank” under 12 U.S.C. Sec. 1785(b)(2)(A).
*33 In the face of Chicopee Co-operative Bank, this choice of language by the Legislature must also be read as a form of express permission, not simply the creating of a right by implication.
If this Court is reading the situation other than the Legislature intended, then the Legislature, not this Court, must clarify G.L.c. 171, Sec. 6A to make it consistent with its intent.
The Credit Union also seeks injunctive and other relief under 42 U.S.C. Sec. 1983. To recover on those aspects of its complaint, the Credit Union must show: (1) that the Commissioner was acting under color of state law — and he was; and (2) that his conduct deprived the Credit Union of rights, privileges or immunities secured by the Constitution or laws of the United States. Macone v. Town of Wakefield, 277 F.3d 1 (1st Cir. 2002). On the latter point, the Credit Union fails.
The Commissioner was acting well within his extensive powers to regulate the Credit Union. For example, G.L.c. 167, Sec. 3 provides in material part that:
Whenever the commissioner deems it expedient, he may cause a meeting of the board of directors . . . of a bank to be held in such manner and at such time and place as he may direct... [A]ny directions or recommendations made by him relative [to] . . . any. .. matters concerning the operation or condition of such bank, may be presented to such board by the commissioner in person . . . and the person having custody of the records of such bank... shall forthwith incorporate such directions and recommendations in the records of such meeting . . . The commissioner may require a monthly report from the recording officer relative to the execution of and compliance with the directions, recommendations or orders set forth at such meeting . . .
That this Court — apparently the first to interpret the reach of G.L.c. 171, Sec. 6A—has reached a conclusion different from that of the Commissioner hardly strips him of his powers and duties under G.L.c. 167, Sec. 3. Nor do the Commissioner’s actions under c. 167, Sec. 3 constitute a deprivation of rights, privileges or immunities secured by the Constitution or Federal law.

ORDER

For the foregoing reasons, the plaintiffs motion for summary judgment on Counts I and II is ALLOWED and on Count III is DENIED.
Further, pursuant to Mass.R.Civ.P. Rule 56(c), last sent., summary judgment is hereby rendered for the defendant on Count III.
A declaratory judgment shall enter in the following language:
1.The plaintiff, Postal Community Credit Union, as a state chartered, federally insured, credit union, has a right under a combination of G.L.c. 171, Sec. 6A and 12 U.S.C. Sec. 1785(b)(2)(A) to convert from a state chartered, federally insured, credit union to a federally chartered mutual savings bank;
2. The Commissioner of Banks, in the instance before the Court, does not have the authority to prohibit the Postal Community Credit Union from exercising its rights under G.L.c. 171, Sec. 6A and 12 U.S.C. Sec. 1785(b)(2)(A); and
3. The “Orders and Directions” of the Commissioner of Banks, issued to the Postal Community Credit Union on July 15, 2002, and later clarified on October 11, 2002, are legally erroneous and, therefore, beyond the authority of the Commissioner in the circumstance before him. As such, the Orders and Directions are declared null, void and of no effect.