CLARK EQUIPMENT COMPANY vs. MASSACHUSETTS INSURERS
INSOLVENCY FUND.

Suffolk. March 6, 1996. - July 12, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Massachusetts Insurers Insolvency Fund. Insurance,* Insolvency of insurer.
*Statute,* Construction. *Words,* "Claimant," "Covered claims."

The nonresident insured of an insolvent insurer was not entitled to
indemnity from the Massachusetts Insurers Insolvency Fund for the
costs of defending and settling tort claims asserted against the insured
by Massachusetts residents, in circumstances in which the insured was
the "claimant" within the meaning of G. L. c. 175D, § 1 (2) (*a*), and
thus did not satisfy the statutory residency requirement prerequisite to
recovery from the Fund. [166-171]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 4, 1992.

The case was heard by *Vieri Guy Volterra,* J., on motions
for summary judgment.

The Supreme Judicial Court granted an application for
direct appellate review.

*Daniel J. Gleason (Erik A. Schmidt* with him) for the
plaintiff.

*Joseph C. Tanski (Joseph C. Marrow* with him) for the de-
fendant.

*Susan G. Papano,* of New York, for United Policyholders,
amicus curiae, submitted a brief.

ABRAMS, J. At issue is whether the nonresident insured of
an insolvent insurer is entitled to indemnity from the Mas-
sachusetts Insurers Insolvency Fund (Fund) for the costs of
defending and settling tort claims asserted against the insured
by Massachusetts residents. The Fund denied indemnification
on the ground that a nonresident insured's costs are not
"covered claim[s]" within the meaning of G. L. c. 175D, § 1
(2) (*a*) (1994 ed.). The insured, Clark Equipment Company

(Clark), brought this action for declaratory and other relief. The case was submitted on cross motions for summary judgment. A Superior Court judge entered judgment for the Fund. Clark appealed, and filed an application for direct appellate review. We granted Clark's application. We affirm.

*Facts.* Clark is a Delaware corporation whose principal place of business is in Indiana. Prior to February 4, 1985, Clark's principal place of business was in Michigan. Clark is in the business of manufacturing and selling forklift trucks.

From September 30, 1981, through September 30, 1985, Clark was insured by The Insurance Company of North America (INA) under policies which provided up to $5 million per year in general liability coverage, and by Integrity Insurance Company (Integrity) under policies which provided an additional $6 million per year after the INA coverage was exhausted. The 1983-1984 INA coverage was exhausted on May 30, 1986, by the costs of defending and settling numerous product liability lawsuits in several States. Clark tendered the claims filed against it for the 1983-1984 policy year to Integrity.

On March 24, 1987, a New Jersey "court of competent jurisdiction," G. L. c. 175D, § 1 (4) (1994 ed.), declared Integrity insolvent. Clark tendered all claims and lawsuits covered by the Integrity policies to the Michigan Property and Casualty Guaranty Association (Michigan Association), and to the Indiana Insurance Guaranty Association (Indiana Association). The Indiana Association refused to accept defense or indemnity obligations for claims against Clark arising from occurrences prior to February 4, 1985, when Clark moved its principal place of business to Indiana. The Michigan Association refused to accept defense or indemnity obligations on the ground that Clark's net worth exceeded the limit established by the Michigan Property and Casualty Guaranty Act.[1]

Clark seeks reimbursement and a declaration that the Fund is liable for Clark's settlement costs, attorneys' fees, and other defense expenses arising from eight product liability suits brought against Clark by Massachusetts residents. By Clark's estimation, these combined costs as of January 9, 1995, totaled $858,569.81.

*Analysis.* The Fund is a nonprofit unincorporated legal

---

[1]General Laws c. 175D (1994 ed.) has no net worth limit.

entity created by G. L. c. 175D, § 3 (1994 ed.). *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, 418 Mass. 486, 486 (1994).[2] It "is obligated to pay covered claims against an insolvent insurer (up to $300,000 per claim) in place of the insolvent insurer." *Id.* The Fund's obligations and expenses are assessed to a broad range of insurers,[3] including all liability and property insurers who write insurance in the Commonwealth. G. L. c. 175D, §§ 1 (5), 5 (1) (*c*) (1994 ed.). Insurers recoup the amounts which they pay into the fund by increasing their rates and premiums. G. L. c. 175D, § 13. See *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund*, 373 Mass. 798, 799 (1977). The cost of paying claims against insolvent insurers "is thus ultimately passed on to the insurance-buying public." *Massachusetts Motor Vehicle Reinsurance Facility* v. *Commissioner of Ins.*, 379 Mass. 527, 530 (1980).[4]

The Fund is obligated only on "covered claim[s]," defined as "unpaid claim[s] . . . which arise[ ] out of and [are] within the coverage of an insurance policy . . . issued by an insurer, if such insurer becomes an insolvent insurer and . . . the claimant or insured is a resident of the commonwealth." G. L. c. 175D, § 1 (2) (*a*). Clark concedes that it is not itself a resident, but argues that it may rely on the residency of the underlying tort claimants to meet the statute's residency requirement.

Clark's reasoning begins with the premise that "claimant" in § 1 (2) (*a*) refers to the underlying tort claimant (rather than the person asserting the claim against the Fund or insolvent insurer). That implies, of course, that "claimant" and insured" are mutually exclusive categories. Clark then notes that the residency requirement of § 1 (2) (*a*) is satisfied

---

[2]General Laws c. 175D is patterned on the Post-Assessment Insurance Guaranty Association Model Bill (Model Act). 1970 Proceedings of the National Association of Insurance Commissioners, Vol. I at 253 (hereinafter NAIC Proceedings).

[3]Chapter 175D applies to "all kinds of direct insurance, except life, accident and health, title, surety, disability credit, mortgage guaranty, financial guaranty or other forms of insurance offering protection against investment risks, insurance of warranties of any type of service contracts and ocean marine insurance." G. L. c. 175D, § 2 (1994 ed.).

[4]"Like taxes, the over-all cost of the solvency of the individual company . . . ultimately falls upon the consumer with the industry serving as the conduit for the collection of the funds." 1970 NAIC Proceedings at 262.

if either "the claimant or insured is a resident of the commonwealth." Thus, according to Clark, the interpretive question is whether an "insured" and a "claimant" may each rely on the other's residency, or only on its own. Because § 9 clearly contemplates cases where the claimant can recover from more than one State, Clark asserts that a "claimant" and an "insured" may each rely on the residency of the other.

This argument fails because Clark's assumption that "claimant" in § 1 (2) (*a*) refers to the underlying tort claimant violates the traditional rule of statutory construction that, "[w]here the Legislature uses the same words in several sections which concern the same subject matter, the words 'must be presumed to have been used with the same meaning in each section.' " *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 188-189 (1969), quoting *Liddell* v. *Standard Accident Ins. Co.*, 283 Mass. 340, 346 (1933). Accord *Lockwood* v. *Adamson*, 409 Mass. 325, 333-334 (1991) (citing cases); *Lincoln* v. *Hillside Park 'N Shop, Inc.*, 370 Mass. 209, 213-214 (1976) (presumption of same meaning not rebutted). The term "claimant" appears six times in c. 175D.[5] In § 5 (1) (*c*), which provides that the Fund may pay claims in the order that they are "received from the claimants," the term refers to persons who have incurred a loss and are now asserting claims against the Fund or insolvent insurer. That is also the necessary meaning of the term in §§ 8 and 9, where "claimant" refers to an insured claimant, and in § 16, which provides that the Commissioner of Insurance may terminate the Fund's operation if the Federal government enacts a plan "to avoid excessive delay or financial loss to claimants or policyholders." Clark fails to rebut the presumption that the term "claimant" in § 1 (2) (*a*) refers, as it does elsewhere in the chapter, to the individual or entity currently asserting a claim against the Fund or insolvent insurer.

Because, in c. 175D, "claimant" refers to the person now asserting the claim, either the underlying tort claimant or the insured may be a c. 175D claimant.[6] Under § 1 (2) (*a*), the

---

[5]The word "claimant" or "claimants" appears in G. L. c. 175D (1994 ed.) in § 1 (2), § 5 (1) (*c*), § 8 (2), § 9 (twice), and § 16.

[6]This conclusion is explicit in the Model Act as amended in 1987, which defines "claimant" as "any insured making a first party claim or any person instituting a liability claim." Post-Assessment Property and Liability Insurance Guaranty Association Model Act (as amended in 1987), reprinted at Insurance Company Insolvency 717, 719 (3d ed. 1993).

residency requirement is satisfied if either the c. 175D claimant or the insured is a resident. If the c. 175D claimant is a tort claimant who resides in another State, and the insured resides in Massachusetts, recovery from the Fund is available. But if the insured is the c. 175D claimant, then the State of residence of the c. 175D claimant and the State of residence of the insured are one and the same. Thus, an insured may recover from the Fund only if it is a Massachusetts resident.

The requirement of c. 175D, § 1 (2) (*a*), that "the claimant or insured [be] a resident of the Commonwealth" therefore means: (1) the c. 175D claimant who is also the insured must be a resident; and (2) the c. 175D claimant who is an underlying tort claimant may be a nonresident if the insured is a resident. The underlying tort claimants in this case are not currently asserting claims. Therefore, they are not "claimants" within the meaning of c. 175D. Clark, the insured, is asserting a claim (and is therefore a c. 175D claimant) but is not a resident. Thus, the residency requirement is not satisfied, and Clark's claims are not "covered claim[s]" under G. L. c. 175D, § 1 (2).[7]

*Other jurisdictions.* We are aware of only one other appellate case in which a nonresident insured tried to collect indemnity from a guaranty association on the basis of the residency of underlying tort claimants whom the insured had already compensated. That case, *T & N* v. *Pennsylvania Ins. Guar. Ass'n*, 44 F.3d 174 (3d Cir. 1994), involved an English corporation whose principal place of business was in Manchester, England. The corporation, T & N, sought to recover from the Pennsylvania Insurance Guaranty Association (PIGA) over $5 million which T & N had expended in litigation and settlement costs and which were owed to T & N by an insolvent insurer. *Id.* at 176.[8] The case turned on the interpretation of the terms "resident" and "covered claim" under the former Pennsylvania Insurance Guaranty Association Act, 40 Pa. Cons. Stat. Ann. §§ 1701.101 et seq. (1970)

---

[7] Clark does not claim that any of its settlements with resident tort claimants included an assignment of rights against the Fund.

[8] See *T & N* v. *Pennsylvania Ins. Guar. Ass'n*, 822 F. Supp. 275, 278-279 (E.D. Pa. 1993), rev'd in part, 44 F.3d 174, 185 (1994).

(Pennsylvania Act),[9] which provided: " 'Covered claim' means an unpaid claim . . . which arises under a property and casualty insurance policy of an insolvent insurer and is . . . [t]he claim of a person who at the time of the insured event resulting in loss or liability was a resident of the Commonwealth . . . ." *T & N, supra* at 178-179, quoting 40 Pa. Cons. Stat. Ann. § 1701.103 (since repealed [see note 9, *supra*]).

The Federal District Court found for T & N, but the Court of Appeals reversed, stating: "The purpose of the [Pennsylvania] Act is clearly to protect *Pennsylvania* residents. If the underlying Pennsylvania claimants can proceed against PIGA to recover their losses, their rights are protected; . . . giving the insured the ability to rely on the underlying claimants' residence does not provide the underlying Pennsylvania claimants with money they would not have received if the insured was not permitted to recover under the Act. . . . Rather, it merely allows a non-resident to make a claim against the Act. Such a result violates the intent of the Act . . . . While it is unfortunate that T & N apparently does not have a guaranty association which it can approach for relief, this does not affect Pennsylvania and PIGA should not be forced to pay T & N's claim on this reason alone. . . . [Because] T & N is the one with the claim, *its* residence is the one which should be examined. As a result, T & N must be the one who was a resident of Pennsylvania at the time of the insured event . . . . At the time of the insured event, T & N was a resident of England. Thus, we conclude that T & N cannot claim recovery from the Association by adverting to the Pennsylvania residency of its underlying claimants." (Emphasis in original.) *Id.* at 180.

Although the definitions of "covered claim" in the Pennsylvania Act and in G. L. c. 175D, § 1 (2), are different, both are patterned on the "Post-Assessment Insurance Guaranty Association Model Bill" (Model Act).[10] We think that under c. 175D, as under the Pennsylvania Act, a nonres-

---

[9]The Pennsylvania Insurance Guaranty Association Act has been repealed. 1994 Pa. Laws 1005, No. 137, § 2. See now 40 Pa. Stat. Ann. §§ 991.1801 et seq.

[10]The Model Act was adopted by the National Association of Insurance Commissioners in 1969. See 1970 NAIC Proceedings at 253. Some version of the Model Act is now in effect in almost every State. Insurance Company Insolvency, *supra* at 701.

ident insured may not use the residency of the underlying tort claimants which it has compensated to make out a "covered claim."

*Wyoming Ins. Guar. Ass'n* v. *Woods*, 888 P.2d 192, 197 (Wyo. 1994), cited by Clark, is not persuasive. In that decision the court stated: "Either the 'claimant' or the 'insured' must be a 'resident' to make a 'covered claim.'. . . The [Guaranty] Act, therefore, permits a foreign 'claimant' to seek recovery when the 'insured' is a 'resident.'. . . Conversely, a foreign 'insured' may also seek recovery when the 'claimant' is a 'resident.' " (Citations omitted.) *Id.* The last sentence, on which Clark relies, is dictum which adopts reasoning of the Federal District Court opinion reversed by *T & N, supra.*[11]

The judge below did not "make [a] binding declaration[ ] of right, duty, status [or] other legal relation." G. L. c. 231A, § 1 (1994 ed.). See *Berkshire Mut. Ins. Co.* v. *Burbank*, 422 Mass. 659, 660 n.2 (1996). This matter is therefore remanded to the Superior Court for entry of a judgment declaring that the Fund has no obligation to defend or indemnify Clark under the Integrity policies. As so modified, the judgment is affirmed.

*So ordered.*

---

[11]Clark also relies on three unpublished trial court decisions which held in Clark's favor in suits which Clark brought against the guaranty associations of Alabama, Arizona, and Ohio. Clark Equip. Co. *vs.* Alabama Ins. Guar. Ass'n, United States District Court No. CV 92-P-2412-S (N.D. Ala. Dec. 8, 1992); Clark Equip. Co. *vs.* Arizona Property & Casualty Ins. Guar. Fund, Maricopa Superior Court No. CV 93-17636 (July 6, 1995); Clark Equip. Co. *vs.* Ohio Ins. Guar. Ass'n, Franklin County Court of Common Pleas No. 92CVH-04-3043 (Dec. 9, 1993). Those decisions are not persuasive. Regarding the point of law at issue, they contain no analysis of the statute or citation to appellate authority.