van Gestel, J.
This matter comes before the Court on cross motions by the Massachusetts Insurers Insolvency Fund (the “Fund”) and Advanced Family Chiropractic (“AFC”). The facts are not really in dispute. Rather, the matter presented involves statutory and contractual interpretation by the Court.
BACKGROUND
The Fund, based in Boston, “is a nonprofit, unincorporated entity created by G.L.c. 175D, Sec. 3 (1994 ed.).” Clark Equipment Co. v. Massachusetts Insurers Insolvency Fund, 423 Mass. 165, 167 (1996). G.L.c. 175D is patterned on the Post-Assessment Insurance Guaranty Association Model Bill. Id. at 167, n.2. The Fund is obligated to pay covered claims against an insolvent insurer in place of the insolvent insurer. “The Fund’s obligations and expenses are assessed to a broad range of insurers, including all liability and property insurers who write insurance in the Commonwealth . . . Insurers recoup the amounts which they pay into the fund by increasing their rates and premiums .. . The cost of paying claims against insolvent insurers ‘is thus ultimately passed on to the insurance-buying public.’ ” Id. at 167.
AFC, presumably some form of professional association, is actually a chiropractor named Dr. Jeffrey Anderson, practicing in Hyannis-, Massachusetts.
In March 1999, Josue N. Nasciemento, Jr. (“Nasciemento”) was involved in a motor vehicle accident in which he was injured. At the time, Nasciemento was insured under an automobile policy issued by Trust Insurance Company (“Trust”). The policy included the statutorily mandated personal injury protection (“PIP”) benefits. Trust was an insurer licensed to transact insurance business in Massachusetts.
Nasciemento received treatment for his injuries from AFC.
Trust was determined to be insolvent by the Supreme Judicial Court on July 26, 2000, effective August 2, 2000.
AFC, after the Trust insolvency, made demand on the Fund for payment of medical bills incurred by Nasciemento for treatment of injuries caused in the accident.
AFC asserts, and the Fund denies, that G.L.c. 90, Sec. 34M applies to the Fund. Although Dr. Anderson avers that he does “not personally care if said claim[s are ] paid within thirty days, ” AFC and the Fund remain in disagreement as to whether c. 90, Sec. 34M applies to the Fund. In issue particularly is the part of Sec. 34M that reads:
In any case where benefits due and payable remain unpaid for thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment of amounts therein determined to be due in accordance with the provisions of this chapter . . . If the unpaid party recovers a judgment for any amount due and payable by the insurer, the court shall assess against the insurer in addition thereto costs and reasonable attorneys fees.
The Fund does not seek a declaration that the Fund is not obligated for the payment of Naciemento’s medical bills from AFC. The Fund states that it is processing those bills and to the extent they are valid covered claims, the Fund will pay such bills. See Memorandum in Support of Plaintiffs Motion for Summary Judgment, p. 4, n.2. It is only the costs and attorneys fees that are challenged by this case.
By reason of the insolvency of Trust, the Fund became obligated to pay certain “covered claims" arising out of and within the coverage of certain Trust insurance policies as provided in c. 175D.
When an insurer insolvency is judicially declared, the Fund typically immediately takes over the handling of tens of thousands of covered claims previously administered by the insolvent insurer. Accordingly, here the Fund is burdened by the large number of claims it received from Trust, numbering over 20,000 claims, including 6,000 PIP claims.
DISCUSSION
Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Here, there are cross motions, such that both plaintiff and defendant argue that there are no material facts in dispute, and each claims that the Court can, and should, rule in its favor based solely upon an interpretation of the statutory language and the setting in which it exists.
Before reaching the statutory issues, the Court observes AFC’s argument that there is no actual controversy which satisfies the requirements of G.L.c. 231A. This Court disagrees. The purpose of c. 231A is to afford relief from uncertainty and insecurity with respect to rights, duties, status and other legal relations. City of Boston v. Keene Corp., 406 Mass. 301, 304-05 (1989). The Fund has uncertainty and insecurity with regard to each of the 6,000 PIP claims it assumed upon Trust’s insolvency. There is enough of a real dispute here to permit this Court to proceed and address the merits. See Commissioner of Correction v. Ferguson, 383 Mass. 651, 653 (1981).
*344 The Court now begins its analysis of the merits by examining the statutory powers granted to the Fund by G.L.c. 175D, Sec. 5(1 )(a) and (b):
(1) The Fund shall:
(a) be obligated to the extent of the covered claims against the insolvent insurer existing prior to the declaration of insolvency and arising within sixty days after the declaration of insolvency . . . but such obligation shall include only that amount of each covered claim which ... is less than three hundred thousand dollars.
(b) be deemed the insurer to the extent of its obligations on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent; . . .
The definition of a “covered claim” in Sec. 1 of c. 175D is: “an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (a) the claimant or insured is a resident of the commonwealth; or (b) the property from which the claim arises is presently located in the commonwealth.”
Statutory interpretation presents a question of law for the Court to decide. Annese Elec. Services, Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In so doing, the primary duty of a judge is to give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound, Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 374 (1998).
In determining the legislative intent behind a particular provision, the Court may also look to relevant provisions in other parts of the statute. Harford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283-84 (1991). Also, the Court ought to apply the plain language used in the statute when that language is unambiguous. ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000); Crenshaw v. Macklin, 430 Mass. 633, 634 (2000); Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999). Sound judgment and common sense must be applied so as to make a statute an effectual piece of legislation. Sun Oil Co. v. Director of Division of Necessaries of Life, 340 Mass. 235, 238 (1960).
G.L.c. 90, Sec. 34M, in the part that is in dispute here, reads:
In any case where benefits due and payable remain unpaid for thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment of amounts therein determined to be due in accordance with the provisions of this chapter . . . If the unpaid party recovers a judgment for any amount due and payable by the insurer, the court shall assess against the insurer in addition thereto costs and reasonable attorneys fees.[1]
The Fund itself is a
“statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer.” Commissioner of Ins. v. Massachusetts Insurers Insolvency Fund, 373 Mass. 798, 799 (1977). The [Fund] is, in essence, simply a conduit to which certain non-insolvent insurers, authorized to do business in the Commonwealth, pay a pro rata amount to enable the [Fund] to pay “covered claims” to insureds whose insurance companies become insolvent subsequent to the issuance of their policies and claims. G.L.c. 175D. The nature of the transaction and the activity engaged in is the payment of “covered claims,” and transactions are motivated by legislative mandate, not business or personal reasons.
Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 776-77 (1992).
Thus, the Fund is not an insurer as such. And G.L.c. 90, Sec. 34M is a statute — to use the language of Barrett just quoted, a “legislative mandate” — directed at insurers for the express purpose of protecting their insureds from delayed payments of mandatory PIP benefits. The protection comes from the “stick” of permitting courts in suits for benefits unpaid for longer than 30 days to be able to award costs and reasonable attorneys fees if the unpaid party recovers a judgment for any amount due and payable. Consequently, a first pass at the language and purpose of c. 90, Sec. 34M would suggest that it should not apply to the Fund unless, of course, the Legislature more directly says so.
An examination of the statutory language setting out the Fund’s obligations to insureds and the statutory definition of a “covered claim” further support the conclusion that the Sec. 34M stick was not intended to be used as a prod on the Fund. The Fund is “obligated to the extent of the covered claims.” The “covered claims” are claims “which arisen out of and [are] within the coverage of an insurance policy” of an insolvent insurer. Again, Sec. 34M is not a part of the Trust insurance policy in issue here.
G.L.c. 175D, Sec. (1)(c) authorizes the Fund to “pay claims in any order which it may deem reasonable, including the payment of claims such as are received from the claimants or in groups or categories of *345 claims.” This, obviously, is in part a legislative recognition of the immense task for the Fund in a case like this wherein it assumed the obligation for 6,000 PIP claims of Trust all at one time. To expect all payments to be investigated, adjusted, compromised, settled and paid within 30 days is practically unrealistic.
Also, G.L.c. 175D, Sec. (1)(d), in addition to commanding the Fund to “investigate claims brought against the Fund and adjust, compromise, settle and pay covered claims to the extent of the fund’s obligation,” mandates that the Fund “shall deny all other claims.” Again, to do all this in 30 days is neither practical, nor ought it be presumed in the absence of specific language in the statute.
But what of the language in c. 175D, Sec. (1)(b) that says that the Fund “shall ... be deemed the insurer to the extent of its obligations on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent”? (Emphasis added.) Should that language be read to say that because it was a duty and an obligation of Trust to pay Nasciemento’s chiropractor his PIP benefits within 30 days, it becomes the duty of the Fund to do the same when it becomes deemed the insurer on Trust’s insolvency? And, even if the duty or obligation follows the Fund, does the statutory stick of costs and attorneys fees follow as well?
Courts ought not add words to statutes that the Legislature chose, whether by conscious action or inadvertence, to omit. See, e.g., Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 8 (1998); Bronstein v. Prudential Life Ins. Co. of America, 390 Mass. 701, 706 (1984); Case of Benson, 47 Mass.App.Ct. 756, 758 (1999).
In the statutory scheme involving the Fund here, the Legislature did no more than put the Fund in the shoes of Trust to the extent of its obligations on covered claims. There is nothing in c. 175D that suggests any problem with the Fund with regard to making timely PIP payments after taking over an insolvent insurer’s obligations. Indeed, the statutory language expressly permits the Fund to pay claims in any order which it may deem reasonable. Insurers, like Trust, do not have that option because of Sec. 34M’s 30-day payment mandate. The sound judgment and common sense that this Court must apply to the statutory scheme to make it an effectual piece of legislation, does not dictate altering the language of c. 175D by reading into it the costs and attorneys fees prod of G.L.c. 90, Sec. 34M. This Court ought not, and will not, presume that language imposing those penalties was meant to extend to the non-insurer Fund.
ORDER
For the foregoing reasons, the plaintiffs motion for summary judgment is ALLOWED, and the defendant’s cross motion for summary judgment is DENIED.
A final judgment shall enter in favor of the Massachusetts Insurers Insolvency Fund declaring that G.L.c. 90, Sec. 34M, insofar as it relates to the imposition of costs and fees for failure to make PIP payments within 30 days of demand, does not apply to the Fund when assuming the obligations of an insolvent insurer.

 Trust itself shows that insurers do, at times, fail to make their PIP payments on time and do get slapped with costs and fees for doing so. See Trust Ins. Co. v. Bruce at Park Chiropractic, 430 Mass. 607 (2000).