van Gestel, J.
This matter comes before the Court on cross motions by the Massachusetts Insurers Insolvency Fund (the “Fund") and The Commerce Insurance Company (“Commerce”). The facts are not really in dispute. Rather, the matter presented involves statutory and contractual interpretation by the Court.
BACKGROUND
The Fund, based in Boston, “is a nonprofit, unincorporated entity created by G.L.c. 175D, Sec. 3 (1994 ed.).” Clark Equipment Co. v. Massachusetts Insurers Insolvency Fund, 423 Mass. 165, 167 (1996). G.L.c. 175D is patterned on the Post-Assessment Insurance Guaranty Association Model Bill. Id. at 167, n.2. The Fund is obligated to pay covered claims against an insolvent insurer in place of the insolvent insurer. “The Fund’s obligations and expenses are assessed to a broad range of insurers, including all liability and property insurers who write insurance in the Commonwealth . . . Insurers recoup the amounts which they pay into the fund by increasing their rates and *346 premiums . . . The cost of paying claims against insolvent insurers ‘is thus ultimately passed on to the insurance-buying public.’ "Id. at 167.
Commerce is a Massachusetts corporation with its principal place of business in Webster, Massachusetts. Commerce is an insurer licensed to transact insurance business in Massachusetts.
On June 23, 2000, the other defendant Joseph Cavalieri (“Cavalieri”) was involved in a motor vehicle accident (the “accident") in which he was injured. At the time of the accident, Cavalieri was insured under an automobile policy (the “Trust Policy”) issued by Trust Insurance Company (“Trust”). There was no other auto policy insuring Cavalieri directly at the time of the accident. The Trust Policy included the statutorily mandated personal injury protection (“PIP”) benefits. Trust also was an insurer licensed to transact insurance business in Massachusetts.
Trust was determined to be insolvent by the Supreme Judicial Court on July 26, 2000, effective August 2, 2000. Earlier, on May 25, 2000, the Supreme Judicial Court entered an “Order Approving Cancellation of Policies,” effectively continuing Trust’s policies in effect only until 12:01 a.m. on October 1, 2000.
By reason of the insolvency of Trust, the Fund became obligated to pay certain “covered claims” arising out of and within the coverage of certain Trust insurance policies as provided in c. 175D.
A claim of Cavalieri for PIP coverage under the Trust Policy was asserted against the Fund. The Fund responded by notifying Cavalieri that he must submit his PIP claim to any insurer providing him PIP coverage.
Commerce issued an auto policy (the “Commerce Policy”) to Paul and Santa Cavalieri, Cavalieri’s parents, and in whose household Cavalieri lived at the time of the accident. The Commerce Policy was in effect at the time of Cavalieri’s accident. The Commerce Policy provided PIP benefits to persons living in the household of Paul and Santa Cavalieri injured in certain circumstances as set forth in the Policy.
On October 11, 2000, Cavalieri submitted a PIP claim to Commerce. By letter dated October 25, 2000, Commerce notified Cavalieri that it was denying coverage of his PIP claim. The Commerce letter to Cavalieri’s counsel explained its position as follows:
The Massachusetts General Laws address the issue of insolvent insurers beginning in Ch. 175D, section 1 ET [sic] seq. The language found in Section 9 states, “Any person having a claim against his insurer under any insolvency provision in his policy which is also a covered claim shall be required to exhaust first his right under such policy.” (Emphasis added[.]) The only language in the Cavalieri’s policy pertaining to insolvency is found in Part 3, Bodily Injury Caused By An Uninsured Auto. There is no insolvency provision in the PIP coverage found in Part 2, Personal Injury Protection, of the policy.
Further, Part 2, Personal Injury Protection, provides benefits to Mr. Cavalieri, “2 . .. if injured while occupying an auto which does not have Massachusetts Compulsory Insurance ...” The vehicle Mr. Cavalieri was occupying did have Massachusetts Compulsory Insurance and therefore it is our opinion that coverage under their policy with Commerce would not apply.
The Fund asserts, and Commerce denies, that Commerce has an obligation to pay Cavalieri PIP benefits under the Trust Policy claim.
DISCUSSION
Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time Inc., 404 Mass. 14, 17 (1989). Here, there are cross motions, such that both plaintiff and defendant Commerce argue that there are no material facts in dispute, and each claims that the Court can, and should, rule in its favor based solely upon an interpretation of the statutory language and the setting in which it exists.
The Court begins its analysis of the merits by examining the statutory powers granted to the Fund by G.L.c. 175D, Sec. 5(1)(a) and (b):
(1) The Fund shall:
(a) be obligated to the extent of the covered claims against the insolvent insurer existing prior to the declaration of insolvency and arising within sixty days after the declaration of insolvency . . . but such obligation shall include only that amount of each covered claim which ... is less than three hundred thousand dollars.
(b) be deemed the insurer to the extent of its obligations on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent. . .
The definition of a “covered claim” in Sec. 1 of c. 175D is: “an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies, issued by an insurer, if such insurer becomes an insolvent insurer and (a) the claimant or insured is a resident of the commonwealth; or (b) the property from which the claim arises is presently located in the commonwealth. ”
Statutory interpretation presents a question of law for the Court to decide. Annese Elec. Services, Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In so doing, *347 the primary duty of a judge is to give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 374 (1998).
In determining the legislative intent behind a particular provision, the Court may also look to relevant provisions in other parts of the statute. Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283-84 (1991). Also, the Court ought to apply the plain language used in the statute when that language is unambiguous. ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000); Crenshaw v. Macklin, 430 Mass. 633, 634 (2000); Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999). Sound judgment and common sense must be applied so as to make a statute an effectual piece of legislation. Sun Oil Co. v. Director of Division of Necessaries of Life, 340 Mass. 235, 238 (1960).
The Fund itself is a
“statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer.” Commissioner of Ins. v. Massachusetts Insurers Insolvency Fund, 373 Mass. 798, 799 (1977). The [Fund] is, in essence, simply a conduit to which certain non-insolvent insurers, authorized to do business in the Commonwealth, pay a pro rata amount to enable the [Fund] to pay “covered claims” to insureds whose insurance companies become insolvent subsequent to the issuance of their policies and claims. G.L.c. 175D. The nature of the transaction and the activity engaged in is the payment of “covered claims,” and transactions are motivated by legislative mandate, not business or personal reasons.
Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 776-77 (1992).
Thus, the Fund is not an insurer, as such.
The Fund is “obligated to the extent of the covered claims.” The “covered claims” are claims “which arise[] out of and [are] within the coverage of an insurance policy” of an insolvent insurer.
The issue at the heart of this case is whether Cavalieri, at the time of his accident, was occupying an automobile which did not have Massachusetts Compulsory Insurance. If so, the Commerce Policy provides coverage because he was living in the household of Paul and Santa Cavalieri at the time. The particular language of the Commerce Policy reads:
We will pay PIP benefits to or for: . . . anyone living in your household, if injured while occupying an auto which does not have Massachusetts Compulsory Insurance.
The Fund argues that the auto which Cavalieri was occupying at the time of his accident does not have Massachusetts Compulsory Insurance because Trust is insolvent. It contends that the intent of the foregoing language in the Commerce Policy is to exclude Commerce’s liability for PIP benefits if the injured person has another source of insurance recovery. When an insolvency intervenes, the Fund asserts, the other source — here Trust — becomes unavailable and Commerce must provide coverage. The Fund suggests that where a solvent insurer has a right under its policy to reduce its obligations because of other insurance, a guaranty fund is not other insurance for that purpose. The Fund cites Harrell v. Reliable Ins. Co., 258 Ill.App.3d 728, 731-32 (1994).
The Fund also points to the provisions in G.L.c. 175D, Sec. 1(2) describing a “covered claim” — which is all that it must pay — as:
an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer . . . “Covered claim” shall not include any amount due any . . . insurer
The Fund cites particularly to Ferrari v. Toto, 383 Mass. 36 (1981), as support for its position that any payment by it of PIP benefits to Cavalieri would, in effect, be an “amount due” Commerce. In the Appeals Court opinion in Ferrari, which opinion was affirmed on further appellate review, that court said: “[T]he Fund is excused from paying claims if the ultimate beneficiary is an insurance company.” 9 Mass.App.Ct. 483, 486 (1980).
Later in the Appeals Court’s Ferrari opinion, Judge Kass said:
The statutory design of G.L.c. 175D contemplates that the public will bear ultimate financial responsibility for the Fund since member insurance companies of the Fund are to recoup payments to the Fund in rates and premiums they charge for insurance policies. G.L.c. 175D, Sec. 13 . . . Requiring payment by the Fund in the instant case would, thus, pass added premium costs on to the driving public, contrary to the legislative intent. We appreciate that this leaves nonmember insurers, and by derivation their customers, bearing a portion of the financial burden for claims against insolvent insurance companies. We think this is consistent with the design of the Fund to indemnify injured persons, but not the insurance industry.
*348 Id. at 487.
In this case, a result absolving the Fund is even less Draconian to Commerce than in Ferrari. Commerce is a member of the Fund, unlike the workers’ compensation carrier in Ferrari.
Commerce responds that to adopt the Fund’s argument would ignore the decision by the Supreme Judicial Court that the Trust policies could remain in force until October 1, 2000, over three months after Cavalieri’s accident. Consequently, says Commerce, at the time of the accident, by the very language of its policy issued to Paul and Santa Cavalieri, the Trust Policy was still in effect and the Trust Policy provided Massachusetts Compulsory Insurance for Cavalieri.
Ordinary contract interpretation supports Commerce’s argument that Cavalieri did have compulsory insurance with Trust at the time of his accident and, therefore, as between Trust and Commerce, if Trust survived, Trust must pay. What, Commerce asks, is the point of the SJC order keeping the Trust policies in force until October 1, 2000? Other than what it just said about the allocation between Commerce and a non-insolvent Trust, this Court has no answer for the latter question. It really is not an issue before it.
Rather, this Court — a trial court — is constrained by the two appellate decisions in Ferrari. The Legislature or the Massachusetts appellate courts can revise or reinterpret the Ferrari opinions. This Court should only follow them. And to follow them means that to the extent the Fund, rather than Commerce, pays PIP benefits to Cavalieri, this “would . . . pass added premium costs on to the driving public, contrary to the legislative intent.” Ferrari, supra, 9 Mass.App.Ct. at 487. In other words, as this Court reads what Judge Kass said in Ferrari, a payment does not have to be made to Commerce — in other words it does not have to be an “amount due” to the insurer — but rather a payment by the Fund that absolves Commerce of having to make that payment to the claimant would be contrary to the legislative intent in creating the Fund.
ORDER
For the foregoing reasons, the plaintiffs motion for summary judgment is ALLOWED, and the defendant’s cross motion for summary judgment is DENIED.
A final judgment shall enter in favor of the Massachusetts Insurers Insolvency Fund declaring that The Commerce Insurance Company is obligated to pay the PIP claims of Joseph Cavalieri and the Massachusetts Insures Insolveny Fund has no obligation to pay such claims.