van Gestel, J.
This matter comes before the Court on cross-motions for summary judgment by the Massachusetts Insurers Insolvency Fund (the “Fund”) and by Premier Insurance Company (“Premier”). There are two other defendants in addition to Premier: Greig Martino (“Greig”) and Nancy Martino (“Nancy"). Greig and Nancy each have filed an answer, but do not seem to have joined in or responded to either of the cross motions. Greig’s and Nancy’s attorney did appear at the hearing, however, and indicated that his interest was primarily to insure that one or the other of the Fund or Premier respond to Greig’s claim.
The essence of the complaint presents issues principally between the Fund and Premier, although Greig and Nancy also would seem to have an interest in the outcome.
This is the second time in recent months that the Fund and Premier have challenged each other on essentially the same issues. See Massachusetts Insurers Insolvency Fund v. Premier Insurance Company, et al., Suffolk Superior Court, Civil Action No. 01-0952 BLS. In the earlier case the issues involved the effect of the insolvency of Trust Insurance Company (“Trust”) on uninsured motorist coverage (“UM"). Here, the Court deals with the effect of the same insolvency on underinsured motorist coverage (“UIM”). A final judgment was docketed in favor of the Fund in Civil Action No. 01-0952 BLS on June 5, 2002 and on June 18, 2002, Premier filed its notice of appeal therefrom. That case is now in the appellate process and has not yet been resolved there.
Because of the similarities between Civil Action No. 01-0952 BLS and this case, this Court re-examined its prior decision with some care and sees no basis for reaching a different conclusion on essentially the same legal issues here.
The facts are not really in dispute. Rather, the matters presented involve statutory and contractual interpretation by the Court.
BACKGROUND
The Fund, based in Boston, “is a nonprofit unincorporated entity created by G.L.c. 175D, Sec. 3 (1994 ed.).” Clark Equipment Co. v. Massachusetts Insurers Insolvency Fund, 423 Mass. 165, 167 (1996). G.L.c. 175D is patterned on the Post-Assessment Insurance Guaranty Association Model Bill. Id. at 167 n.2. The Fund is obligated to pay “covered claims” against an insolvent insurer in place of the insolvent insurer. “The Fund’s obligations and expenses are assessed to a broad range of insurers, including all liability and property insurers who write insurance in the Commonwealth . . . Insurers recoup the amounts which they pay into the fund by increasing their rates and premiums . . . The cost of paying claims against insolvent insurers ‘is thus ultimately passed on to the insurance-buying public.’ ” Id. at 167.
Premier is a Massachusetts corporation with its principal place of business in Fall River, Massachusetts. It is in business as an insurer licensed to transact insurance business in Massachusetts.
On January 22, 1997, Greig, while operating a vehicle owned and operated by him, was involved in a motor vehicle accident (the “accident”), in which he collided with a motor vehicle operated by Karin Russian (“Russian”). Greig was injured in the accident, and Russian was legally responsible for the accident.
At the time of the accident, Russian was insured under an auto policy issued by Metropolitan Property and Casualty Insurance Company (“Metropolitan”).
At the time of the accident, Greig was insured under automobile insurance policy issued by Trust Insurance Company (the “Trust Policy”). Greig’s Trust Policy provided bodily injury limits and underinsured motorist limits of $250,000/8500,000.
Greig lives with his wife, Nancy. At the time of the accident, Nancy was insured under a policy issued by Premier (the “Premier Policy”) which provided UIM coverage with limits of $250,000/$500,000, under the following provision:
Sometimes an owner or operator of an auto legally responsible for an accident is underinsured. Under this Part, we will pay damages for bodily injury coverage to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance. We will only pay if the injured person is legally entitled to recover from the owners or the operators of all underinsured autos. [ ] We will pay damages to or for . . . (2) any household member . . . while occupying an auto not owned by you . . .
The UIM provisions of the Premier Policy contained the following exclusions:
We will not pay damages to or for any household member who has a Massachusetts auto policy of his or her own or who is covered by a Massachusetts auto policy of another household member providing underinsured auto insurance with higher limits. [The “Page 21 Exclusion.”]
We will not pay to or for . . . any household member if struck by, or while occupying an auto owned by that household member which does not have Massachusetts compulsory auto insurance. [The “Page 22 Exclusion.”]
Trust was determined to be insolvent by the Supreme Judicial Court on July 26, 2000, effective August 2, 2000. As provided in c. 175D, by reason of the insolvency of Trust, the Fund became obligated to pay certain “covered claims” arising out of and within the coverage of the Trust Insurance Policy.
Greig asserted a bodily injury claim against Metropolitan, Russian’s liability insurer, and Metropolitan offered to settle Greig’s claim for the policy’s liability limits of $100,000, which Greig accepted.
*229 Greig then asserted a claim against the Fund under the UIM provisions of his Trust Policy. The Fund responded by notifying Greig that he was required to exhaust any rights against any solvent insurers which provide coverage for his claim.
Greig next asserted a UIM claim against Premier. Premier denied coverage on the grounds that there is no UIM coverage by reason of the Page 21 Exclusion because Greig had a Massachusetts policy of his own, namely his Trust Policy. Further, Premier argued alternatively that there is no UIM coverage under its policy by reason of the Page 22 Exclusion since Greig was occupying an auto owned by him which did not have Massachusetts compulsory insurance because Trust is insolvent.
Just as in Civil Action No. 01-0952 BLS, there thus became a dispute between Premier and the Fund as to which would be responsible to Greig: the Fund because of Trust’s insolvency, or Premier because Trust’s insolvency entitled Greig to UIM coverage under Nancy’s policy.
DISCUSSION
Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Here, there are dueling motions, such that both the Fund and Premier, although for quite different reasons, argue that there are no material facts in dispute and their respective motions should be allowed. The Fund claims that the Court can, and should, rule in its favor, based solely upon an interpretation of the statutory and contractual language and the setting in which it exists. Premier makes the same argument, but urges a contrary result.
The Court begins its analysis of the merits of the Fund’s position by examining the statutory powers granted to the Fund by G.L.c. 175D, Sec. 5(1 )(a) and (b):
(1) The Fund shall:
(a) be obligated to the extent of the covered claims against the insolvent insurer existing prior to the declaration of insolvency and arising within sixty days after the declaration of insolvency . . . but such obligation shall include only that amount of each covered claim which ... is less than three hundred thousand dollars.
(b) be deemed the insurer to the extent of its obligations on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent; . . .
The definition of a “covered claim” found in Sec. 1(2) of c. 175D is: “an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (a) the claimant or insured is a resident of the commonwealth; or (b) the property from which the claim arises is presently located in the commonwealth.”
Section 9 of c. 175D modifies the extent of the Fund’s obligations regarding a covered claim. It provides that:
Any person having a claim against his insurer under any insolvency provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant’s insurance policy.
Statutory interpretation presents a question of law for the Court to decide. Annese Elec. Services, Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In so doing, the primary duty of a judge is to give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Cos. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 374 (1998).
In determining the legislative intent behind a particular provision, the Court may also look to relevant provisions in other parts of the statute. Harford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283-84 (1991). Also, the Court ought to apply the plain language used in the statute when that language is unambiguous. ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000); Crenshaw v. Macklin, 430 Mass. 633, 634 (2000); Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999). Sound judgment and common sense must be applied so as to make a statute an effectual piece of legislation. Sun Oil Co. v. Director of Division of Necessaries of Life, 340 Mass. 235, 238 (1960).
The Fund itself is a
“statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer.” Commissioner of Ins. v. Massachusetts Insurers Insolvency Fund, 373 Mass. 798, 799 (1977). The [Fund] is, in *230 essence, simply a conduit to which certain non-insolvent insurers, authorized to do business in the Commonwealth, pay a pro rata amount to enable the [Fund] to pay “covered claims” to insureds whose insurance companies become insolvent subsequent to the issuance of their policies and claims. G.L.c. 175D. The nature of the transaction and the activity engaged in is the payment of “covered claims,” and transactions are motivated by legislative mandate, not business or personal reasons.
Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 776-77 (1992).
Thus, the Fund is not an insurer, as such.
The Fund is “obligated to the extent of the covered claims.” The “covered claims” are claims “which arisen out of and [are] within the coverage of an insurance policy” of an insolvent insurer.
Section 9 of c. 175D, quoted above on p. 6, limits the extent of the Fund’s obligations regarding covered claims by requiring the exhaustion of the UIM coverage under any policy providing such coverage to Greig. Nancy’s Premier policy provides UIM coverage to Greig if, at the time of the accident, he was Nancy’s household member and was occupying an auto not owned by her. The Premier Policy’s UIM coverage for Greig was triggered by the insolvency of Trust, which would otherwise have provided UIM coverage for the injury. See Vokey v. Massachusetts Insurers Insolvency Fund, 381 Mass. 386, 389 (1980).
“The purpose of the exhaustion requirement of the first sentence of Sec. 9 is to render the Fund a source of last resort in the event of an insolvency.” Id. at 390. Greig, therefore, must first exhaust his UIM claim against Nancy’s Premier Policy as a household member for recoverable injuries sustained while occupying an auto not owned by Nancy.
Premier’s Page 21 Exclusion is not applicable because the insolvency of Trust triggered the Premier Policy and c. 175D, Sec. 9. The viability of an exclusion based upon the availability of other insurance is determined by the insured’s ability to collect from such other insurance when the insured needs the insurance. The Page 21 Exclusion in the Premier Policy does not mandate that the availability of coverage under a Massachusetts auto policy shall be determined “at the time of the accident,” and the Court should not read that language into the policy. Rather, when an insolvency occurs, c. 175D alters the rules which might otherwise be applicable if the insurers involved were solvent. The rights and obligations of involved parties must be determined, taking into account the legislative intent expressed in the governing statutes.
The fact that Trust may have been solvent on the date of the accident is of.no significance. In proceedings involving the Fund, the Court must analyze the rights of the Fund at the time the claim is made against it, taking into account the limitations provided by law. Clark Equip. Co. v. Massachusetts Insurers Insolvency Fund, 423 Mass. 165, 166 (1996). At the time Greig made his UIM claim against the Fund he did not have a Massachusetts auto policy of his own because of the Trust insolvency. The Legislature cannot have intended that Greig was to look to his insolvent carrier for relief. Nor can the exhaustion requirement of c. 175D, Sec. 9 be ignored by compelling the Fund to respond ahead of Premier. To do the latter would effectively make the Fund pay the obligation of a solvent insurer.
Premier’s Page 22 Exclusion does not apply in this situation either. This exclusion is similar to the provision in G.L.c. 175, Sec. 113L(5)(b) which excludes UM coverage where an injured person occupies a motor vehicle owned by a person who is not properly insured under G.L.c. 90, Sec. 34A. It is a form of penalty for failure to properly insure a vehicle. Clearly, neither Premier nor the Legislature can be seen as intending to penalize someone like Greig who properly purchased insurance but had the misfortune of having his insurer become insolvent. He cannot be said “not [to] have Massachusetts compulsory auto insurance” at the time of the accident here.
Premier’s positions run directly counter to c. 175D’s purpose of not using the Fund to protect solvent insurance companies.
The statutory design of G.L.c. 175D contemplates that the public will bear ultimate financial responsibility for the Fund since member insurance companies of the Fund are to recoup payments to the Fund in the rates and premiums they charge for insurance policies. G.L.c. 175D, Sec. 13 . . . Requiring payment by the Fund in the instant case would, thus, pass added premium costs on to the driving public, contrary to the legislative intent.
Ferrari v. Toto, 9 Mass.App.Ct. 483, 487 (1980). See also Vokey v. Massachusetts Insurers Insolvency Fund, supra, 381 Mass. at 390.
ORDER
For the foregoing reasons, the plaintiff s motion for summary judgment is ALLOWED, and the defendant Premier’s cross-motion to dismiss is DENIED.
A final judgment shall enter in favor of the Massachusetts Insurers Insolvency Fund declaring that Premier Insurance Company is obligated to provide UIM benefits to Greig Martino, in whatever amount may be appropriate, under the Premier Policy on account of the accident which occurred on January 22, 1997, and the Massachusetts Insurers Insolvency Fund has no obligation to pay Greig Martino therefor until the coverage provided under the Premier Policy is first exhausted.